## CAMPBELL V. FOX.

1. SET-OFF: TORT. Under section 1740, Code of 1851, claims for damages arising from a tort, as well as those for money due on contract, may be pleaded as set-off. LOWE, C. J. dissenting.

*Appeal from Polk District Court.*

THURSDAY, DECEMBER 20.

PLAINTIFF declares upon a note, on account, and for damages sustained by the malpractice of defendant as an oculist; answer in denial, and also setting up in three several pleas, a set-off *for slanderous words spoken* by plaintiff of defendant, before the commencement of the action, in relation to his skill as such physician. A motion was made to exclude these pleas on the ground that damages of this character could not be set off or claimed in a cross-action. Motion overruled and plaintiff appeals.

*Bates & Phillips* for the appellant.

*S. V. White* and *C. C. Cole* for the appellee.

WRIGHT, J.—Counsel concede that the determination of this question depends upon the construction to be given to section 1740 of the Code of 1851. This is true, with the further remark, that in giving this section a construction we must look to the policy and spirit of our system of pleading

and practice. The provision referred to reads: "The defendant may also set up by way of *set-off or cross-action any claim which would have been the subject of an action against the plaintiff*, and which was held by the defendant, either matured or not, at the time the suit was commenced. But such claim must be matured at the time it is so offered as a set-off." It will be observed that the language used is "by way of *set-off or cross action*." It is not "by way of counter-claim," not that "defendant may recoup his damages" &c., nor yet alone a set-off growing out of a contract, thus excluding damages for a trespass and the like, but by way of *set-off or cross-action*, thus including, in our judgment, all that is meant by *counter-claim, cross-demand, recoupment of damages, set-off*, and similar words as found in modern legislation and at common law. Now a counter claim, it has been held, is not a separate and independent indebtedness, but a claim arising from or connected with the transaction out of which the plaintiff's cause of action arose. *Lovejoy* v. *Robinson*, 7 Ind. 399. And if the language had been used in our statute, as in Rev. St. Ind. page 41, section 59, there could have been but one construction perhaps. We are brought to a very different conclusion, however, when that which a defendant may set up is styled a *set-off or cross-action*. And see Rev. Stat. 1860, sections 2886, 2889, 2891 and the notes on page 524–'5–'6.

It is a *set-off or cross-action* then, which defendant may set up, and the next inquiry is whether it is only a claim or damages growing out of or founded upon contract which can be thus pleaded, or whether damages for a tort may be the subject of such set-off. And here we remark that the language used is very broad and comprehensive. There may be set up by way of cross-action or set-off, *any claim*, which would have been the subject *of an action against the plaintiff*. Is the matter set up by defendant a claim then, and was it the subject of an action against plaintiff. It would indeed seem that upon this subject there could be no

room for controversy.  We are not aware of any authority for limiting the word "claim" as here used to actions *ex contractu*.  The Code abolished all technical forms of actions and pleading.  What was contemplated was that the party should, with reasonable certainty, state in his pleading a substantial cause of action.  And whether it sounded in tort or arose from contract, was immaterial so far as mere names were concerned.  Whether one or the other, defendant stated but a claim, which he held or set up against plaintiff.  And according to the spirit and intendment of this Code, it is as correct to speak of a demand growing out of a tort as a *claim*, as though founded upon contract.  What legal or logical inconsistency according to our system of practice in this view?  To our minds none whatever.  This defendant in substance says that the plaintiff wrongfully withholds from him so much money, which he owes to him for defaming his character.  To this money he asserts his claim, and to it he has the same right in substance, and in fact, as though owing upon contract.  There may, it is true, be more difficulty in setting or ascertaining the amount thereof, before a jury, than if it was fixed by agreement.  This, however, can not be more than an argument addressed against the convenience of the rule, rather than the rule itself.  But, would the claim here set up be the subject *of an action against the plaintiff*, if the defendant had instituted his suit thereon originally in the District Court.  Of this it seems there can be no doubt.  If it would, then it may be set up, according to this section, by way of set-off or cross-action.  This language, it is claimed, however, is controlled by the words "held" and "matured," it being argued that these words imply a demand which can be *held*, and which *matures*, in the sense that claims upon contracts are *held* and *mature*.  To our minds the word *held* was designed to limit the time *when* the claim to be set-off, &c., was to be owned by the defendant.  That is to say, defendant must have a claim *at the time* of the commencement of the

Campbell v. Fox.

plaintiff's action, and if he has a note or account and transfers it before, or obtains either afterwards, or if he is entitled to damages for slanderous words spoken afterwards, he can not plead the same as set-off or in a cross-action. And the word "matured" only introduces a new rule, that a debt or demand not due at the time of the commencement of the action, but maturing before it is offered, may be recovered by way of set-off. The statute doubtless contemplated, that for the most part only claims growing out of contracts would be thus litigated. And yet the language, in view of its scope and purpose, and the policy and design of the statute, includes all demands.

It has been decided by this court that an action for an assault and battery did not die with the person charged, under section 2502, in *McKinley* v. *Adm'rs. of McGregor*, 10 Iowa 111; and that the same was true in an action of slander, *Carson* v. *McFadden*, 10 Iowa 91. And see *Dunham* v. *Dennis, et al*, 9 Iowa 543, where this section (1740) is examined and construed. And also, sections 1751-2, 1741, 1768, 1801-2, all of which, with the decisions cited, indicate the policy of the statute.

Judgment affirmed.

LOWE, C. J., *dissenting*. Being unable to concur with a majority of the court in this case, the grounds of my dissent will be briefly stated. The right to set up by way of cross-action, damages for slanderous words spoken, depends upon the question whether a fair grammatical construction of the language employed in section 1740 of the Code of 1851, will authorise so great a latitude of defense. If the right of a cross-action for any claim which would have been the sujbect of an action against the plaintiff, was conferred without the subsequent qualifying words, the defense set up in the fifth, sixth and seventh pleas ought perhaps to be sustained, but it will be noted that this right is limited or

qualified by the following *words:* "*And which* (referring to the claim for which a cross-action could be set up) *was held by the defendant, either matured or not, at the time the suit was commenced. But such claim must be matured at the time it is so offered as a set-off.*" This language, connected as it is by a conjunction copulative with the cross-action referred to, points quite unmistakably, in my judgment, to a class of transactions growing out directly or indirectly of contracts of some description. If, however, this connection had been by a conjunction disjunctive, in the manner found in section 2891 of the New Code, it would then be susceptible, perhaps, of the extended construction sought to be given to section 1740, and would embrace all the demands which the defendant might have against the plaintiff, for there the general right of a cross-demand is given for any claim which would be the subject of an action, *or which,* (meaning any other claim, when the ellipsis is supplied) was then held, either matured or not, if matured when pleaded.

But under the phraseology of section 1740 of the old Code, the claim for which a cross-action may be set up is restricted by a necessary grammatical construction to a class of claims that are capable of being "*held,*" that is, possessed in the sense that a *chose in action* is held and possessed, and also matured, that is due, which usually pre-supposes the existence of a claim immatured and not due. These words are obviously used in their ordinary signification in this section, and can not, without a philological misuse of language, be predicated of, or used with reference to, damages for slanderous words spoken. If an injury to character has thus been committed, we might speak of it as a claim that had accrued, and for which a right of action exists, but not as a claim that was matured and held by one party against another.

There is undoubtedly one class of unliquidated damages which may be pleaded by way of counter-claim or recoupment of damages, but these must grow out of or relate to

the particular transaction or contract which constitutes the cause of action, as for instance a breach of warranty, or fraud in the sale of a chattel, or want of skill, or negligence in workmanship, and which can be ascertained by calculation.

But not so with another class of unliquidated damages, which can not be reduced to a sum certain by computation, but which in their very nature as in the case of slander, must rest in the opinions of the jury or the court, who make up their estimate of the sum by the peculiar circumstances of each case.

If the slanderous words complained of in this case had been published of the defendant in reference to his treatment of plaintiff's eyes, so as to connect it with the transaction or mal-practice, on account of which the plaintiff had brought his suit, it is possible under the rapid growth of the doctrine of recoupment in this country, the defendant might even in the absence of a statute to that effect, have pleaded and given in evidence the slanderous words in question in diminution of damages; but such was not the case, and I am of the opinion that the court, in refusing to strike out the pleas in question, erred, and the judgment should be reversed.