## CASTEEL v. BROOKS.

No. 4143.   Opinion Filed April 27, 1915.

(148 Pac. 158.)

1. ABATEMENT AND REVIVAL—Survival of Action—Personal Injuries—Action Against Administrator.  Under section 5943, Comp. Laws 1909, entitled "Actions that survive" for an injury to the person of another, an action may be maintained by such injured person against the administrator of such wrongdoer's estate.

2. HUSBAND AND WIFE—Injury to Married Woman—Right of Action.  A married woman living with her husband, who is injured by the assaults of another, may maintain an action therefor in her own name, separate and apart from her husband.

3. TRIAL—Harmless Error—Instructions.  While an instruction standing alone may be subjected to criticism as being indefinite

and uncertain, yet if other instructions fairly submit the material issues to the jury, reversable error is not committed.

(Syllabus by Watts, C.)

*Error from District Court, Murray County;*

*R. McMillan, Judge.*

Action by N. J. Brooks against John H. Casteel, as administrator of the estate of H. L. Nelson, deceased. Judgment for plaintiff, and defendant brings error. Affirmed.

*Emanuel & Broadbent* and *John A. Haste,* for plaintiff in error.

*Walter E. Latimer,* for defendant in error.

WATTS, C. This action was commenced in the district court of Murray county on August 3, 1910, by defendant in error, Brooks, who was plaintiff below, against plaintiff in error, Casteel, administrator, who was defendant below, and will hereafter be referred to as they appeared in the court below.

The plaintiff alleges in her petition that she is a resident of Murray county, and defendant Casteel, is administrator of the estate of H. L. Nelson, deceased; she is 54 years of age, and that at the time of the filing of the petition, and at the time complained of, she and her husband were living together and were engaged in the hotel and boarding house business at Sulphur; that Mrs. Anna East, deceased, and several other persons, on or about the 20th day of May, 1910, were boarding at their hotel, on which date she was in her bedroom, and deceased Mrs. East and deceased Nelson were in the adjoining room, the parlor, and that deceased Nelson, with malice, willfully and unlawfully shot and killed Mrs. East with a pistol; that, hearing a shot, she ran into the parlor, and was met by Nelson at the parlor door, who threatened her with death, and, drawing a pistol, told her in a violent threatening tone that if she did not go back into her room he would kill her; that he drove her back in to her

room, and immediately returned and fired another shot at Mrs. East, which killed her, and immediately shot and killed himself; that for the reason of the unlawful assault and acts of Nelson she fainted and fell to the floor, where she remained unconscious for a while; that after she regained consciousness upon going into the parlor she saw the dead bodies of Nelson and Mrs. East and the room spattered with blood, which caused her to become hysterical and highly nervous, to such an extent that she was almost insane; that she could not gain control of herself, and required the attention of a physician for several days to quiet her, since which time her nervous system is unsettled and disturbed to the extent that she has not recovered; that prior to the alleged occurrence she enjoyed good health, her nervous system was normal and under good control, and because of the alleged torts and wrongs of Nelson she is not in good health, and her nervous system has been torn to pieces to the extent that she is permanently injured and impaired in health, and she has not been able to do her household duties, which she was previously able to perform; she was compelled to enlist the service of a physician at an expense of $2, and has spent for medicine the sum of $10, and had lost until July 21, 1912, 52 days of labor and time from the hotel, which was worth $1 per day; that she suffered physical and mental pain and distress by reason of the assaults in the sum of $1,000; and that she has been permanently damaged in her health in the sum of $1,000, and because of the wrongs and injury complained of ought to recover from the estate of Nelson the sum of $2.064.

The defendant filed a motion to make more definite and certain, which was denied, and exception taken, and defendant then filed a general and special demurrer, charging in the special demurrer that certain portions of the petition were insufficient, for the reason that no part of the allegations contains or states facts sufficient to constitute a cause of action against the defendant, which demurrer was overruled and exception taken.

On April 24, 1911, defendant filed answer in the way of

general denial, but admitted that he was the duly appointed, qualified, and acting administrator of the estate of Nelson; that the plaintiff was a married woman, and at the time mentioned in the petition she and her husband were in the hotel business in Sulphur, and further admitting that Nelson caused the death of Mrs. East and himself and alleged that Mrs. East was a woman of adventurous and questionable character; that plaintiff received Mrs. East as a guest at her hotel, and permitted her to remain as a guest knowing her character as such; that plaintiff and her husband intentionally introduced Mrs. East to Nelson with knowledge of her character, and, with the full knowledge of the plaintiff, Mrs. East inveigled herself into the confidence of Nelson, and conducted herself towards him in the presence of plaintiff and others as an accepted lover with the design to blackmail Nelson; that the conduct of Mrs. East was brought about by her introduction to Nelson on the part of the plaintiff, and was the direct cause of the tragedy; that the plaintiff did not go to the parlor where the tragedy occurred because of any right or duty, but voluntarily, and to satisfy her curiosity; that the nervous shocks and injuries, if any, were the direct result of her voluntary act, in which defendant was not responsible. Plaintiff replied by generally denying the allegations of the answer.

The defendant filed motion for judgment on the pleadings for the reason that the pleadings show that plaintiff is not entitled to recover, which motion was overruled, and the defendant excepted. The cause was tried to the court and jury. Plaintiff introduced her evidence, which substantially sustains the allegations in the petition. The defendant did not introduce any evidence. At the conclusion of the plaintiff's evidence the defendant demurred, for the reason that the same failed to make a cause of action on the pleadings, which demurrer was overruled, and exception taken. Defendant then moved the court to instruct the jury to return a verdict in his favor, which was overruled, and exception taken.

The plaintiff, her husband, and Dr. J. V. Ponder testified in

her behalf, and their evidence substantially sustains the allegations of the petition. No evidence on behalf of defendant. The court gave general instructions to the jury, who found for plaintiff in the sum of $5,000. Motion for new trial was filed, heard, and overruled, and exception taken. Defendant appeals, and assigns the following as error:

"(1)   The court erred in overruling the general and special demurrer of plaintiff in error to the petition of defendant in error.

"(2)   In not sustaining the general and special demurrer of plaintiff in error to the petition of defendant in error.

"(3)   In overruling the motion of plaintiff in error for an instructed verdict for the defendant and judgment on the pleadings.

"(4)   In not instructing a verdict for the plaintiff in error upon his motion for judgment on the pleadings.

"(5)   In overruling the demurrer of plaintiff in error to the evidence of defendant in error.

"(6)   In not sustaining the demurrer of plaintiff in error to the evidence of defendant in error.

"(7)   In not setting aside the verdict and judgment because they were excessive.

"(8)   In not setting aside the verdict and judgment on account of misconduct of the jury.

"(9)   In giving paragraph 4 of the general instructions to the jury, over the objection and exceptions of plaintiff in error.

"(10)   In giving paragraph 5 of the general instructions to the jury, over the objection and exceptions of plaintiff in error.

"(11)   In giving paragraph 6 of the general instructions to the jury, over the objections and exceptions of plaintiff in error.

"(12)   In giving paragraph 8 of the general instructions to the jury, over the objection and exceptions of plaintiff in error.

"(13)   In giving paragraph 10 of the general instructions to the jury, over the objections and exceptions of plaintiff in error.

"(14)   In not setting aside the verdict and judgment because they were contrary to law.

Form No. 7

"(15)   In not setting aside the verdict and judgment because they were not supported by the evidence.

"(16)   In admitting incompetent and improper evidence over the objections and exceptions of plaintiff in error.

"(17)   In refusing to strike out, upon motion of plaintiff in error, incompetent and improper evidence.

"(18)   In overruling the motion of plaintiff in error for a new trial.

"(19)   In refusing to grant the plaintiff in error a new trial.

This action seems to have been brought under sections 5943, Comp. Laws of 1909 (section 5279, Rev. Laws of 1910) as follows:

"Sec. 5943.   Actions that Survive.—In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought, notwithstanding the death of the person entitled or liable to the same."

1.   The first proposition briefed and argued is whether the plaintiff for injuries to her person committed by the intestate in his lifetime can maintain an action against the administrator of the wrongdoer's estate.   While this proposition is not altogether new, it is somewhat novel.   Many of the states have similar statutes to ours, and in most instances the Supreme Court of the respective states have construed same.   We get the statute from Kansas, and right here is where the trouble begins.   The Supreme Court of that state, in *Martin v. Mo. P. Ry. Co.,* 58 Kan. 475, 49 Pac. 605, holds:

"An action for personal injuries not resulting in death survives to the personal representatives under section 420 of the Civil Code, where the injured person dies from other causes.   If death results from the injuries, an action cannot be maintained by the personal representative of the deceased for the benefit of the estate, but may be brought, under section 422 of the Civil Code, for the benefit of the next of kin."

The Kansas case construes the "pending action" statute. which is the same as section 5944, Comp. Laws 1909 (section 5280, Rev. Laws 1910) ; while the case at bar is the "cause of action" statute (section 5943, Comp. Laws 1909; section 5279, Rev. Laws 1910). Brewer, C., in *St. L. & S. F. Ry. Co. v. Goode,* 42 Okla. 784, 142 Pac. 1185, reaches a very different conclusion, as announced in the Kansas case *supra,* and, as his opinion is so well fortified with reason and authoritative research, we refer those interested to it. In following the conclusions in the case just mentioned, we are not unmindful that the case under consideration differs in point of fact, in that the instant case is where the wrongdoer died before the action was brought; while in the case cited the action was brought by the injured against the wrongdoer, and revived in the name of the personal representative of the injured. The reason for the rule is the same in either event. If, however, this was not true, there are ample authorities supporting our view. *Carson v. McFadden,* 10 Iowa, 91; *McKinlay v. McGregor,* 10 Iowa, 111; *Wehr v. Brooks, Executor,* 21 Ill. App. 115; *Knox v. City,* 73 Ill. 214.

In *Davis v. Nichols,* 54 Ark. 358, 15 S. W. 880, Cockrill, C. J., construing substantially the same statute said:

"The terms of the section are specific also to the effect that the cause should survive in favor of Nichols' estate against Curtner's administrator."

If we were not able to find any specific authority, the language of the statute is too plain to admit doubt:

"The causes of action * * * for * * * injury to the person * * * shall also survive; and the action may be brought, notwithstanding the death of the person entitled or liable to the same."

—means exactly what it says, and we are satisfied our position is correct, regardless of conflict.

2. The second proposition briefed and argued is whether a married woman may maintain an action of this kind in her own

right, separate and apart from her husband. The defendant contends that, if a cause of action at all, it was in favor of plaintiff's husband.

Section 3655 and 5561, Comp. Laws 1909 (sections 3363 and 4684, Rev. Laws 1910), respectively provide:

"Sec. 3655. Rights of Married Women.—From and after the passage of this act, woman shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman, which her husband does as a man; and for any injury sustained to her reputation, person, property, character or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has to appeal in his own name alone: Provided, that this act shall not confer upon the wife a right to vote or hold office, except as is otherwise provided by law."

"Sec. 5561. Married Woman as Plaintiff.—A married woman may sue and be sued in the same manner as if she were unmarried."

These sections appear to be in the face of defendant's contention. In *Enid City Ry. Co. v. Reynolds*, 34 Okla. 405, 126 Pac. 193, Harrison, C., said:

"The foregoing authorities, together with the line of decisions therein cited, clearly support the general proposition that a married woman living with her husband, and suing in her own name in an action for personal injuries, may recover for loss of capacity to earn in her own separate right, for the mental and physical sufferings caused by the injury and the probable effect which such injuries may have upon her future health. * * *

"Now, it being plaintiff's right, both by nature and statute, to enjoy the health and strength and earning capacity with which she had been endowed by nature, and her right under the statutes to control in her own name the fruits of her health and earning capacity, she had the right to do as she pleased with her earnings; and if she chose to use them in paying for medical treatment which had been made necessary by the negligent act of defendant, she had a right to recover for same, notwithstanding the fact that the law imposes on the husband the obligation to

pay for the wife's medical treatment. There is nothing in this record showing that the husband was able and willing to pay for same; nothing to show whether he was a man of means and of industrious habits, or whether he was profligate and worthless; and, if there were, we cannot see where her legal rights would be affected by the question. Her earnings belonged to her, wherever she chose to place them; and whether deposited in a bank, or invested in treatment for her health, they were hers to deal with, to control, and to sue for, and it was not error for the court to admit the testimony of which plaintiff * * * complains."

3. Defendant further contends that the latter portion of fifth paragraph of the court's instruction was calculated to induce the jury to give double damages, and was erroneous, to wit·

"I charge you that plaintiff ought to recover of the defendant herein such sums as will compensate plaintiff for her said damage, if any, and also such damages, if any, as she may have sustained by reason of her incapacity to labor as formerly."

We think the instruction subject to criticism as being indefinite and uncertain and calculated to confuse the jury (*Missouri K. & T. Ry. Co. v. Hanning,* 91 Tex. 347, 43 S. W. 508); but, in view of other instructions fairly submitting the material issues being given to the jury, we do not think it reversible error.

Therefore, finding no reversible error, we recommend that the judgment of the lower court be affirmed.

By the Court: It is so ordered.